## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A CRIMINAL COMPLAINT

I, Sean Sullivan, a Special Agent with the U.S. Department of State, Diplomatic Security Service, being duly sworn, depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of a criminal complaint charging Andrea Cochran with false use of a passport, in violation of 18 U.S.C. § 1543, and aggravated identity theft, in violation of 18 U.S.C. §§ 1028A(a)(1) and 1028(b).

2. I have been employed by the U.S. Department of State, Diplomatic Security Service as a Special Agent since 2016. I am currently assigned to the Portsmouth Resident Office in Portsmouth, New Hampshire, and have been since September of 2022. During my time as a special agent, I have participated in investigations of passport fraud, visa fraud, money laundering, conspiracy, wire fraud, identity theft and fraudulent document investigations. I have attended and successfully completed the Criminal Investigator Training Program at the Federal Law Enforcement Training Center, and the Basic Special Agent Course at the Diplomatic Security Training Center.

3. The information in this affidavit is based upon my own knowledge, records furnished to me in my official capacity, and information provided by other law enforcement officials, as well as information gained through my training and experience. This affidavit is intended to provide the facts necessary for a determination of probable cause for the requested arrest warrant and complaint.

4. Based on my training and experience and the facts as set forth in this affidavit, I submit that probable cause exists to believe that Andrea Cochran ("Cochran") willfully and knowingly used and attempted to use a false, forged, counterfeited, or altered

passport or instrument purporting to be a passport in violation of 18 U.S.C. § 1543. I submit there is also probable cause to believe Cochran knowingly possessed and used, without lawful authority, a means of identification of Victim 1 during and in relation to the commission of bank fraud—a felony violation enumerated in 18 U.S.C. § 1028A(c)—knowing that the means of identification belonged to another actual person, in violation of 18 U.S.C. §§ 1028A(a)(1) and 1028A(b).

PROBABLE CAUSE

5.     On June 20, 2024, Officer Bissonnette with the Westbrook Police Department ("WPD") responded to the Cumberland County Credit Union ("CCCU") in Westbrook, Maine for a fraud complaint. Officer Bissonnette was advised by Dispatch that a CCCU representative reported a female—described as approximately 5'5", with short hair, and wearing a maroon shirt and jean pants—had presented fraudulent identification and left the CCCU with $12,000 from a CCCU member's account.

6.     At CCCU, Officer Bissonnette met with a branch service manager ("Employee 1"). Employee 1 reported that, approximately fifteen minutes before Officer Bissonnette's arrival, the above-described female requested to make a withdrawal from a CCCU teller ("Employee 2"). Employee 1 reported hearing part of the conversation about the withdrawal transaction between Employee 2 and the female subject, including Employee 2 asking for the subject's social security number and the subject providing the entire nine-digit social security number for an actual CCCU member ("Victim 1"). The subject then asked for two different withdrawals from Victim 1's accounts—$5,200 from Victim 1's money market account and $6,800 from Victim 1's savings account. The subject electronically signed for each transaction. Employee 1 also reported the subject was wearing a Bluetooth ear piece.

7. Employee 1 reported to Officer Bissonnette that the subject was observed walking towards Portland on Main Street. After reviewing the transactions and speaking with other bank administrators, Employee 1 determined the transactions were fraudulent. Employee 1 provided Officer Bissonnette a screenshot of the subject, a portion of which is included below. Officer Bissonnette and Dispatch disseminated the image to area police units and agencies.



8. Employee 1 then informed Officer Bissonnette that she was receiving information that a similar fraudulent transaction had just occurred at the CCCU branch in Portland, Maine, in which someone withdrew $7,250 from Victim 1's account. Employee 1 distributed the screenshot of the female subject from the Westbrook CCCU branch to other branches in the area.

9. Officer Bissonnette made contact with Victim 1 by phone. Victim 1 advised that she had made a transaction for $15 at the CCCU branch in Yarmouth but had not been

**Affidavit in Support of Criminal Complaint—Page 3**

to the Westbrook or Portland CCCU branches that day. Victim 1 also advised that she had not given permission for anyone to make a transaction on her behalf.

10.     Employee 1 then informed Officer Bissonnette that she was receiving information that the female subject was in police custody at the CCCU branch in Windham, Maine. Officer Bissonnette made contact with another law enforcement officer and learned that the subject—identified as Andrea Cochran—was in custody. The other law enforcement officer reported that someone from the Windham CCCU branch called the police after a female matching the Westbrook CCCU screenshot from Employee 1 entered the Windham CCCU branch. The other law enforcement officer further reported that Cochran had several different forms of identification on her, including in the name of Victim 1.

11.     Cochran was transported to the WPD. Windham Police Department Officer LeBlanc provided Officer Bissonnette with items found on Cochran's person including, among other things, a wallet containing a social security card for Andrea Cochran and an HSBC Visa Card in Victim 1's name. The wallet also contained an instrument purporting to be a United States passport card bearing the name and date of birth of Victim 1.

12.     At the WPD, Officer Bissonnette reviewed a printout of Cochran's driver's license information and photograph from Texas. Officer Bissonnette observed that the information Cochran provided to identify herself matched most of what was contained in the information from Texas (except for the address and emergency contact name). Officer Bissonnette observed that the driver's license photograph in Texas's records bore a striking resemblance to Cochran but appeared to have been taken "probably 20 years ago."

13. The WPD obtained copies of the receipts for the $5,200 and $6,800 withdrawals from Victim 1's accounts at the Westbrook CCCU on June 20, 2024. Both bore signatures purporting to be Victim 1's signature.

14. Officer Bissonnette advised Cochran of her *Miranda* rights. I understand that Cochran waived her rights and agreed to answer questions. I understand that Cochran ultimately disclosed, in summary and in part, that she is homeless and an addict. I have not yet had an opportunity to review the recording of Cochran's interview.

15. A copy of a booking photograph of Cochran taken following Cochran's arrest is included below.



16. I have viewed the purported passport card located on Cochran's person. The instrument was in the given name and surname of Victim 1 and bore Victim 1's date of birth, but the picture on the card was a likeness of Cochran. The instrument also bore "Passport Card no. C36598741." A photograph (which I obtained from the WPD) of the instrument is included below with Victim 1's name and date of birth redacted.



A portion of an additional picture of the purported passport card, more clearly capturing the image of Cochran, is included below.



17.     I have been in contact with Employee 1, who confirmed that the female subject—later identified by law enforcement as Cochran—presented the purported passport card to Employee 2 as a form of identification to access Victim 1's accounts.

18.     The Diplomatic Security Service queried the Consular Consolidated Database ("CCD"), the Department of State repository for passport and visa records, and determined that Victim 1 has a passport card that bears a number other than C36598741. The CCD also revealed that no passport card has been issued in Cochran's name and date of birth.

**Affidavit in Support of Criminal Complaint—Page 6**

19.     According to 22 CFR § 51.3(e)—which bears the heading "Types of passports"—a passport card is issued to a national of the United States on the same basis as a regular passport, and is valid for departure from, and entry to, the United States through land and sea ports of entry between the United States and Mexico, Canada, the Caribbean and Bermuda.

20.     I submit there is probable cause to believe Cochran knew that the means of identification—that is, the instrument purporting to be a passport card in the name of Victim 1 and bearing Victim 1's date of birth—belonged to another actual person because Cochran used the instrument (bearing her own likeness) to successfully complete two withdrawals from an actual person's bank account at the Westbrook CCCU.

## CONCLUSION

21.     Based on my training and experience and the facts as set forth in this affidavit, I submit that probable cause exists to believe that Cochran willfully and knowingly used and attempted to use a false, forged, counterfeited, or altered passport or instrument purporting to be a passport in the name of Victim 1 in violation of 18 U.S.C. § 1543. I submit there is also probable cause to believe Cochran knowingly possessed and used, without lawful authority, a means of identification of Victim 1 during and in relation to the commission of bank fraud—a felony violation enumerated in 18 U.S.C. § 1028A(c)—knowing that the means of identification belonged to another actual person, in violation of 18 U.S.C. §§ 1028A(a)(1) and 1028A(b).

SBU -LAW ENFORCEMENT

I, Sean Sullivan, hereby swear under oath that the information set forth in this affidavit is true and correct to the best of my knowledge, information, and belief, and that I make this oath under the pains and penalties of perjury.

Dated at Portland, Maine this 21st day of June 2024.

*[signature]*

Sean Sullivan, Special Agent
U.S. Department of State
Diplomatic Security Service

Sworn to telephonically and signed electronically in accordance with the requirements of Rule 4.1 of the Federal Rules of Criminal Procedures

Date: Jun 21 2024

City and state: Portland, Maine

*[Judge's signature]*

Karen Frink Wolf, U.S. Magistrate Judge
Printed name and title

Affidavit in Support of Criminal Complaint—Page 8

SBU -LAW ENFORCEMENT